**SO ORDERED.**

**SIGNED this 25 day of March, 2015.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:                                                                CASE NO. 14-03676-5-DMW

STEPHEN WASSERMAN
                                                                          CHAPTER 13
            DEBTOR.

ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY AND
DENYING MOTION TO COMPEL ABANDONMENT OF PROPERTY

This matter comes on to be heard upon the Motion for Relief from the Automatic Stay and to Compel Abandonment of Property ("Motion") filed by Robin Y. Wasserman ("Ms. Wasserman"), and the response filed by Stephen Wasserman ("Debtor"). The court conducted a hearing in Raleigh, North Carolina on August 6, 2014. Travis Sasser, Esq. appeared on behalf of Ms. Wasserman, and David F. Mills, Esq. appeared for the Debtor. At the conclusion of the hearing, the court took the matter under advisement. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

A.     BACKGROUND

1.     The Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on June 26, 2014 ("Petition Date").  Joseph A. Bledsoe, III, Esq. ("Trustee") was appointed to fulfill the duties as provided in 11 U.S.C. § 1302.

2.     Prior to the Petition Date, the Debtor and Ms. Wasserman were parties to an equitable distribution proceeding ("State Court Action") pending in Johnston County District Court, Case No. 13 CVD 3529.  The filing of the Petition automatically stayed the equitable distribution proceedings pursuant to 11 U.S.C. § 362(a)(1).

3.     On Schedule A filed with the court, the Debtor listed real property ("Real Property") with a value of $145,880.00 owned as tenants-in-common with Ms. Wasserman.  Although the Debtor has net equity of $3,520.00, he claimed the sum of $15,715.00 as exempt on Schedule C-1.

4.     On Schedule B filed with the court, the Debtor listed personal property ("Personal Property") worth a total of $246,669.40.  This amount is comprised of the following:

   a.     "401K and Pension through Fidelity" ("401k and Pension") with a balance of $235,366.12;

   b.     2010 Mercury Milan ("Mercury") valued at $9,950.00 and subject to a lien in the amount of $5,858.00;

   c.     Checking and savings account ("Account") holding $1,153.28 in funds; and

   d.     Furniture, clothing, and a wedding band and bracelet ("Miscellaneous Property") with a total value of $200.00.

5. The Debtor claimed the Account as exempt under N.C. Gen. Stat. § 1-362 and the Miscellaneous Property as exempt pursuant to N.C. Gen. Stat. § 1C-1601(a)(4). The Debtor claimed an exemption in the amount of $4,081.00 for the Mercury pursuant to a combination of N.C. Gen. Stat. §§ 1C-1601(a)(2) and (3), and claimed the 401k and Pension as fully exempt pursuant to N.C. Gen. Stat. § 1C-1601(a)(9).

6. Other than these assets listed, the Debtor owns no other significant assets.

7. On Schedule F filed with the court, the Debtor listed Ms. Wasserman as a non-priority unsecured creditor pursuant to the equitable distribution claim pending in the State Court Action. Schedule F indicated that the "Debtor seeks to discharge [Ms. Wasserman's] claim."

8. Ms. Wasserman filed the Motion on July 10, 2014, asserting that because the 401k and Pension is not property of the estate, the automatic stay should be lifted to allow her to pursue equitable distribution of the 401k and Pension. It is important to note that the 401k and Pension belongs to the Debtor. Ms. Wasserman has provided no proof that she is vested with title to that asset (as was the case in *Walston*, *supra*). The Motion further asserts that the Mercury, Account and Miscellaneous Property, to the extent they are claimed as exempt, should also be equitably distributed in the State Court Action.

9. The court agrees with Ms. Wasserman that the stay should be modified, but only conditionally to allow the equitable distribution claim to be determined in the State Court Action and as limited by this Order. Any claim that she may receive in that litigation against the Debtor or property of the estate must be administered through and by this court.

B. <u>JURISDICTION</u>

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

C. DISCUSSION

1. 401k and Pension

a. An ex-spouse's interest in marital property is generally "cut off by the filing of [a] bankruptcy petition" if the spouse's rights in the property are not fixed pre-petition. *Perlow v. Perlow*, 128 B.R. 412, 415 (E.D.N.C. 1991).

b. In *Perlow*, the Honorable W. Earl Britt reasoned that because a Chapter 13 trustee possesses the powers "of a hypothetical lien creditor and a hypothetical bona fide purchaser of property from the debtor," the interest possessed by an individual seeking equitable distribution of particular marital property is "cut off" on the date a petition is filed. *Id.* (citing 11 U.S.C. § 544 and quoting *In re Fisher*, 67 B.R. 666 (Bankr. Colo. 1986)). Consistent with *Perlow*, bankruptcy courts generally treat unliquidated equitable distribution claims as general unsecured claims.

c. Despite the reasoning stated in *Perlow*, however, some courts have found that its logic does not always apply with respect to a specific asset. In *Walston v. Walston*, 190 B.R. 66 (E.D.N.C. 1995), the Honorable Terrence W. Boyle distinguished *Perlow* and found that an ex-spouse's interest in the debtor's military pension was "proprietary" in nature, a specific interest, rather than a general unsecured claim that would be discharged through bankruptcy. 190 B.R. at 67. The *Walston* court reasoned that because the debtor's pension was clearly marital property ("marital property includes all vested pension, retirement, and other deferred compensation rights, *including military*

4

*pensions eligible under the federal Uniformed Services Former Spouses' Protection Act*."), the debtor and his ex-spouse became "co-owner[s]" of the pension upon divorce." *Id.* (quoting N.C. Gen. Stat. § 50-20(b)(1)).

    d.    While the 401k and Pension may be marital property, that determination has not yet been made and should be made in the State Court Action. That necessity supports a modification of the automatic stay.

    e.    The *Walston* court also rested its ruling on the fact that the debtor's pension could not be reached by secured creditors. 190 B.R. at 68 ("There is no reason to treat Ms. Walston as a creditor whose rights to this property were discharged by bankruptcy, since none of Mr. Walston's secured creditors could have ever reached this property.").

    f.    Similarly, the 401k and Pension is not property of the bankruptcy estate, and no creditor can claim an interest in this asset because of its exempt status. 11 U.S.C. § 541(b)(7)(A)(i); N.C. Gen. Stat. § 1C-1601(a)(9) 757. The Trustee has no interest in the 401k and Pension, so the Trustee's "strong-arm powers" under § 544 do not affect Ms. Wasserman's interest. The reasoning in *Perlow* thus does not apply, especially because the creditor in *Perlow* "did not object to the discharge, request relief from the stay . . . to continue the state court action for equitable distribution, or request that the bankruptcy court abstain from exercising jurisdiction over the matter pursuant to 28 U.S.C. § 1334(c)(1)." 128 B.R. at 416.

    g.    Allowing Ms. Wasserman relief from the stay to liquidate her interest in the 401k and Pension through the State Court Action would have no effect on the funds available to the Debtor's creditors.

5

  2. <u>Exempt Personal Property</u>

   a. A North Carolina "debtor is entitled to retain free of the enforcement of the claims of creditors . . . [t]he debtor's aggregate interest in any property, not to exceed five thousand dollars ($5,000) in value[1] . . . [and t]he debtor's interest, not to exceed three thousand five hundred dollars ($3,500) in value, in one motor vehicle." N.C. Gen. Stat. §§ 1C-1601(a)(2)-(3). A debtor may also exempt wages earned during the 60-day period preceding the petition date, if the court finds the earnings are necessary for the support of the debtor's family. N.C. Gen. Stat. § 1-362.

   b. The Debtor exempted the Account under N.C. Gen. Stat. § 1-362 and the Miscellaneous Property up to their full value pursuant to N.C. Gen. Stat. § 1C-1601(a)(4). The Mercury was declared exempt to the extent of $4,081.00 under a combination of N.C. Gen. Stat. §§ 1C-1601(a)(2) and (3). These items became property of the estate pursuant to 11 U.S.C. § 541, and the exemptions allowed under 11 U.S.C. § 522(b) exclude those properly exempted assets – or interests[2] in assets – from the estate. *Reeves v. Callaway*, 546 F. App'x 235 (4th Cir. 2013).

   c. Even if property (or an interest therein) is excluded from the bankruptcy estate by an exemption, that property is still protected from pre-petition creditor claims under 11 U.S.C. § 362(a)(6) unless the court orders otherwise, which it will not.

---

[1] This exemption, often referred to as the "wildcard exemption" may only be used to the extent a debtor does not use his entire homestead exemption available under N.C. Gen. Stat. § 1C-1601(a)(1). The homestead exemption allows a debtor to exempt up to $35,000.00 in value in his personal residence, but a debtor may choose to allocate up to $5,000.00 of the homestead exemption toward other property, pursuant to the wildcard exemption of N.C. Gen. Stat. § 1C-1601(a)

[2] North Carolina has two types of exemptions. "The first category of exemptions allows debtors to exempt items in full, regardless of value. These exemptions, located in subsections (6), (7), (8), (9), (11) and (12) of N.C. Gen. Stat. § 1C-1601 and N.C. Gen. Stat. § 1-362, preserve a debtor's interest in the item or property itself, irrespective of the value assigned by the debtor. . . . The second category, by contrast, allows debtors to exempt an interest in value up to a specified monetary amount in the particular item, asset or property described. Subsections (1), (2), (3), (4), (5) and (10) of N.C. Gen. Stat. § 1C-1601(a) provide debtors with a limited interest exemption, which allows them to exempt their monetary interest therein as opposed to the property itself." *In re Gregory*, 487 B.R. 444, 450-51 (Bankr. E.D.N.C. 2013).

3.  Stay Relief

a. Although stay relief is appropriate because the primary property at issue, the 401k and Pension, is not property of the estate, relief would be appropriate regardless because the matter of equitable distribution is better left to be decided by the Johnston County District Court.

b. To determine the appropriate court to liquidate a claim, bankruptcy courts should apply the balancing test followed in the Fourth Circuit and enunciated in *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992). The *Robbins* test considers the type of claim(s) being asserted, how to best serve judicial economy and the impact that relief from the stay would have on the debtor's estate. *Id.*

c. In making this determination, the court must "balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Id.* (citing *In re Peterson*, 116 B.R. 247, 249 (D. Colo. 1990)).

d. Ms. Wasserman is seeking relief in order to pursue equitable distribution of what appears to be marital property, an action which requires the application of state law. While this court could potentially oversee equitable distribution proceedings more quickly than the Johnston County District Court, judicial economy would not be served if this court conducted those proceedings because those proceedings would have no impact on the Debtor's estate. The factors enumerated in *Robbins* clearly fall in favor of modifying the stay for cause under § 362(d)(1).

e. Often in cases in which the stay is lifted so that equitable distribution proceedings can either be initiated or resumed, this court limits relief to allow a

7

determination of each party's claim but reserves authority over enforcement of any liquidated claim resulting from the proceedings. This procedure was undertaken by the late Honorable Marvin R. Wooten and affirmed by the United States Fourth Circuit Court of Appeals in *Robbins*. The benefit to the parties is in allowing the state court to hear the equitable distribution case, then allowing this court to administer the assets.[3] "The expertise of the state court is in liquidating the domestic relations claim. The expertise of the bankruptcy court is in liquidating the property of the estate and distributing it to creditors." *Secrest v. Secrest (In re Secrest)*, 453 B.R. 623, 630-31 (Bankr. E.D. Va. 2011).

4. <u>Abandonment</u>. In addition to requesting relief from the stay, the Motion also seeks abandonment by the Trustee of the Personal Property pursuant to § 554, because it is of inconsequential value to the Debtor's bankruptcy estate. The most substantial asset, the 401k and Pension, is excluded from the estate by operation of § 541, so abandonment is not a remedy. The other assets may be of inconsequential value, but they certainly are not a burden to the estate. Finally, the estate will need to remain open to administer any potential claim Ms. Wasserman may be awarded in the State Court Action (beyond the distribution of the 401k and Pension). Abandonment is inconsistent with that possibility; therefore, abandonment of the assets will not be allowed; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Motion for Relief from the Automatic Stay is allowed for the purpose of Ms. Wasserman resuming the State Court Action for the purpose of equitable distribution. In the

---

[3] In certain cases, an ex-spouse may return to this court with nothing more than a liquidated general unsecured claim, consistent with *Perlow*.

8

event Ms. Wasserman obtains a monetary claim against the Debtor, that claim shall be administered in this court; and

2. That portion of the Motion seeking an Order compelling the Trustee to abandon the Personal Property is denied.

END OF DOCUMENT